# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Rebecca R. Pallmeyer | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 7956 | **DATE** | 11/30/2004 |
| **CASE TITLE** | Catherine Aikens vs. Northwestern Dodge, Inc., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 12/20/2004 at 9:00 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Defendant National's motion to dismiss (Doc. No. 55-1) is denied. National is directed to file its Answer within 14 days.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 4 number of notices | **Document Number** |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | DEC 01 2004 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 11/30/2004 date mailed notice | |
| | Copy to judge/magistrate judge. | | | |
| ETV | courtroom deputy's initials | Date/time received in central Clerk's Office | ETV mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CATHERINE AIKENS, | ) | **DOCKETED** |
| Plaintiff, | ) | DEC 0 1 2004 |
| v. | ) No. 03 C 7956 | |
| NORTHWESTERN DODGE, INC., HOUSEHOLD AUTOMOTIVE FINANCE CORPORATION, TRIAD FINANCIAL CORPORATION, ONYX ACCEPTANCE CORPORATION and NATIONAL AUTO FINANCE CO., | ) Judge Rebecca R. Pallmeyer | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

On October 16, 2003, Plaintiff Catherine Aikens attempted to purchase a 2003 Kia Spectra from Defendant Northwestern Dodge, Inc. ("Northwestern"). The deal fell apart when Defendant National Auto Finance Co. ("National"), an indirect lender, refused to extend credit on the terms to which Plaintiff had agreed. In this lawsuit, Plaintiff charges Northwestern with violations of the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691(d); the Fair Credit Reporting Act, 15 U.S.C. § 1681m; the Truth in Lending Act, 15 U.S.C. § 1638(b)(1) and Regulation Z, 12 C.F.R. § 226.17(a); and the Illinois Consumer Fraud Act, 815 ILCS 505/10a(a). In addition, Plaintiff charges Defendant National and several other consumer credit companies with violations of ECOA. Defendant National moves to dismiss Count IX of the Third Amended Complaint, the count charging National with ECOA violations. For the reasons set forth here, the motion is denied.

## FACTS

For purposes of a motion to dismiss, the allegations of Plaintiff's Third Amended Complaint are presumed true. According to those allegations, on October 16, 2003, Plaintiff "consummated a credit transaction with Northwestern Dodge to purchase a 2003 Kia Spectra" before receiving the disclosures required by the Truth in Lending Act ("TILA"), and gave Northwestern her own 2002



Kia Rio as a trade-in. (Third Amended Complaint ¶ 6.) At some point after "consummation," Plaintiff learned that the terms disclosed on the contract were not accurate and that the disclosures violated TILA. (*Id.* ¶ 7.) Plaintiff attempted to cancel the purchase, but Northwestern refused to return her trade-in vehicle; nevertheless, at some point "[s]ubsequently," Northwestern rejected Plaintiff's credit application and demanded that she return the 2003 Kia Spectra. (*Id.* ¶¶ 8, 10.) Northwestern has not yet returned Plaintiff's trade-in, and Plaintiff alleges that she "continued to make payments on a car she doesn't have." (*Id.* ¶ 12.) (The court is uncertain whether Plaintiff did return the 2003 Kia, or whether Plaintiff is referring to that car or to the trade-in as the "car she doesn't have.")

Count IX of the Third Amended Complaint, the claim against National, incorporates those allegations. (*Id.* ¶ 69.) Count IX asserts, further, that on October 17, 2003, National "approved Plaintiff for financing on terms different from those requested," but failed to notify her of its action within 30 days as required by 15 U.S.C. § 1691(d) of the ECOA. (*Id.* ¶¶ 71, 72.)

## DISCUSSION

Defendant National moves to dismiss Count IX for three reasons: National contends (1) that National was not a "creditor" within the meaning of ECOA because Plaintiff's allegations show that the credit transaction was complete before National took any action; (2) that Plaintiff has not alleged that she submitted a "completed" application to National; and (3) that Plaintiff has not alleged that she did not receive notice of National's action directly from Northwestern. Mindful that dismissal of a complaint under Rule 12(b)(6) is appropriate only "when there is no possible interpretation of the complaint under which it can state a claim," *Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971, 981 (7th Cir. 2004), the court addresses Defendant's three arguments in turn.[1]

---

[1] Defendant raised a fourth argument for the first time in its reply brief: that Plaintiff
(continued...)

## I. National was a "Creditor"

The ECOA requires a "creditor" to notify any applicant for credit of its action within 30 days afer receiving a completed application for credit. As National itself recognizes, the ECOA and its implementing regulations define "creditor" broadly. According to the statute, the term includes "any assignee of any original creditor who participates in the decision to extend, renew, or continue credit." 15 U.S.C. § 1691a(3). The regulations, similarly, explain that a creditor is "a person who, in the ordinary course of business, regularly participates in a credit decision, including setting the terms of the credit." 12 C.F.R. § 202.2(l). As the court understands the circumstances here, National falls comfortably within that definition.

Plaintiff explains in her Response to the Motion to Dismiss (hereinafter, "Pl.'s Resp.") that she signed papers on October 16, 2003, reflecting her purchase of the Kia Spectra at $20,250.00, an amount higher than the sticker price. The terms set an 18.95% interest rate and a $422.45 monthly payment. As reflected in the retail installment contract ("RIC") she signed, the deal was conditioned on Northwestern's ability to obtain financing from a third party within ten days. (Retail Installment Contract, Ex. C to Pl.'s Resp.) Northwestern did immediately seek third-party financing and obtained loan approval from National, but not on the same terms proposed to Plaintiff.

---

[1](...continued)
has alleged that she attempted to cancel the contract with Northwestern and thus simultaneously withdrew her "purported credit applications." (National Auto Finance Company's Reply Memorandum, at 2.) Because Plaintiff has not had an opportunity to respond to this argument, the court need not address it. The court notes, however, that the attempt to cancel was unsuccessful; Northwestern refused to cancel the contract or return Plaintiff's trade-in. (Third Amended Complaint, ¶ 8.) In any event, the complaint does not reveal when Plaintiff made the effort to cancel the deal, nor is there any basis for the court to conclude that National relied on that effort in failing to notify Plaintiff of a decision on her application for credit. In *Freeman v. Koerner Ford of Scranton, Inc.*, 536 A.2d 340, 341 (Pa. Super. 1987), plaintiff ordered a 1986 Ford Escort from defendant dealer but, when the dealer asked him to provide his Social Security number as part of the credit check, plaintiff failed to do so and instead ordered the car from another dealer. The court held that defendant, the jilted dealer, had no obligation to provide written notice of its reasons for rejecting plaintiff's credit application where plaintiff himself had abandoned the effort to purchase a car from defendant and effectively revoked his financing application. Those circumstances bear no resemblance to this case.

National proposed a minimum interest rate of 22.95%, a lesser loan amount, a lower monthly payment, and a "dealer fee" to be paid by Northwestern. Neither National nor any other finance company ever did finance the purchase, however, and Northwestern "subsequently cancelled the credit contract." (Pl.'s Resp. at 2.) National did not notify Plaintiff that it refused to approve the original terms or that it had offered different terms. (*Id.*; Third Amended Complaint ¶ 72.)

In arguing that it is not a "creditor" under ECOA, National seizes upon Plaintiff's allegation that she "consummated" a credit transaction with Northwestern Dodge on October 16, 2003. Any action National took on October 17 could not have affected that "consummated" transaction, National contends. Reading of the complaint as a whole, however, reveals that whatever agreement Plaintiff struck with Northwestern on October 16 fell apart later. As she explains in her response memorandum, her purchase of the 2003 Kia was a "spot delivery," in which Northwestern entered into a "conditional, unfunded finance contract" subject to the condition that it be funded by sale to a third party. (Pl.'s Resp. at 7.) In *Coleman v. General Motors Acceptance Corp.*, 220 F.R.D. 64, 76 (M.D. Tenn. 2004), the defendant finance company argued, as National does here, that "spot deliveries" are "consummated when the contract is initially signed, before the credit information is transmitted to, or approved by, the financing company." The court concluded, to the contrary, that the "true purchase of the vehicle" takes place "when financing has been secured, terms have been set, and the final contract has been signed by the consumer." *Id.* at 77. This court agrees with the *Coleman* court that an indirect lender–GMAC in that case, National in this one–may be a creditor for purposes of ECOA even with respect to those customers who obtain cars through spot deliveries. *Id.*

Plaintiff's allegation that she "consummated" the transaction can fairly be understood as an assertion that the purchase was a "done deal" on the agreed terms from her own perspective. The RIC gave Northwestern–not Plaintiff–an "out" if it could not obtain financing on those terms. Northwestern did seek third-party financing from National, and cancelled the deal with Plaintiff after

4

National declined the terms to which Plaintiff and Northwestern had agreed. The circumstances described by Plaintiff, presumed true here, support the inference that National "participated" in Northwestern's decision "to extend, renew, or continue credit": the RIC was conditioned upon Northwestern's finding a lender, and Northwestern pulled out after National turned it down.

National is in the business of providing financing for auto purchasers; the fact that it did not do so for Plaintiff Aikens does not remove National from the reach of the regulatory definition of "lender." *Cf. Treadway*, 362 F.3d at 978 ("although it failed to do so for Treadway, there can be no question that Gateway regularly arranges credit for its customers" and therefore was covered by ECOA). As the court explained in *Osborne v. Bank of America Nat'l Ass'n*, 234 F. Supp. 2d 804 (M.D. Tenn. 2002), where an indirect lender determines the customer's creditworthiness and sets a "buy rate" for an auto loan as well as the maximum markup, the lender may be a "creditor" subject to the terms of ECOA. At a minimum, the court concludes that there is a "possible interpretation of the complaint" that would support such a conclusion. National's motion to dismiss on this basis is denied.

## II.    Submission of "Completed Application"

National's remaining arguments require only brief discussion. National correctly observes that the thirty-day period for providing notice begins to run from the date of submission of a completed application. 15 U.S.C. § 1691(d)(1). National argues that the complaint should be dismissed because Plaintiff has not alleged that she submitted a "completed" application for credit to National. The fact that Plaintiff has failed to allege a particular fact may not be fatal under notice pleading standards. In any event, the court concludes her allegations support the inference that her application was complete. Under the relevant regulation, an application is deemed complete "[o]nce a creditor has obtained all the information it normally considers in making a credit decision." 12 C.F.R. Pt. 202, Supp. I, comment 9(a)(1)-1 (2000) (Federal Reserve Board official staff

interpretation of Regulation B). As the Eighth Circuit recently explained, whether an inquiry about credit constitutes an application "'depends on how the creditor responds to the applicant, not on what the applicant says or asks.'" *Davis v. U.S. Bancorp*, 383 F.3d 761, 766 (8th Cir. 2004), quoting 12 C.F.R. Pt. 202, Supp. I, comment 2(f)-3 (2000). *See also Saldana v. Citibank, Fed. Sav. Bank*, No. 93 C 4164, 1996 WL 332451, at *5 (N.D. Ill. June 13, 1996) (an application is complete when the creditor receives the information it ordinarily requires to evaluate the loan).

Plaintiff alleges that on October 17, 2003, National did approve her for financing, albeit on terms different from those to which she had agreed. (Third Amended Complaint ¶ 72.) That allegation, deemed true for purposes of this motion, satisfies the court that the information National received and reviewed was all of the information that National normally considers in reaching a decision. Plaintiff observes, further, that in support of its motion to dismiss an earlier complaint in this case, National submitted the affidavit of its Senior Vice President, Mark Warren. According to Warren's own affidavit, National's "credit analyst," Mathew Trost, "decided to approve the credit application" for Plaintiff and notified Northwestern of that approval on October 17, 2003. (Affidavit of Mark Warren, ¶ 6.)

National's motion to dismiss based upon Plaintiff's failure to allege that she submitted a "completed application" is denied.

### III. Notice from Northwestern

Where, as in this case, a dealer attempts to obtain credit on behalf of an applicant, notice of adverse action may be made either directly by the creditor or indirectly through the third party:

> Where a credit has been requested by a third party to make a specific extension of credit directly or indirectly to an applicant, the notification and statement of reasons required by this subsection may be made directly by such creditor, or indirectly through the third party, provided in either case that the identity of the creditor is disclosed.

6

15 U.S.C. § 1691(d)(4). National's final argument is that Plaintiff has failed to allege that she did not receive notice from Northwestern of National's credit decision. Plaintiff appropriately labels this argument as frivolous. In paragraph 19 of the complaint, Plaintiff alleged "[Northwestern] took adverse credit action against Ms. Aikens and *failed to notify her* of the adverse action and the reasons, in writing, as required by the ECOA." (Third Amended Complaint ¶ 19; emphasis supplied.) Count IX of the Complaint, the only one in which National is named, incorporated paragraphs 1 through 13 by reference. Plaintiff arguably should have incorporated paragraph 19 as well. Her failure to do so, however, does not support dismissal.

## CONCLUSION

Defendant National's motion to dismiss (Doc. No. 55-1) is denied. National is directed to file its answer within 14 days. A status conference is set for December 20, 2004 at 9:00 a.m.

ENTER:

Dated: November 30, 2004

REBECCA R. PALLMEYER
United States District Judge

7