UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CATHERINE AIKENS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 03 C 7956 |
| ) | |
| NORTHWESTERN DODGE, INC., ) | Judge Rebecca R. Pallmeyer |
| HOUSEHOLD AUTOMOTIVE FINANCE ) | |
| CORPORATION, TRIAD FINANCIAL ) | |
| CORPORATION, ONYX ACCEPTANCE ) | |
| CORPORATION, and NATIONAL AUTO ) | |
| FINANCE CO., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Catherine Aikens wanted to purchase a vehicle from Northwestern Dodge, Inc., and applied for financing through the dealership. Northwestern Dodge sent Plaintiff's credit application to Defendant Onyx Acceptance Corporation ("Onyx"), but Onyx declined the application for reasons it identified as "extensive credit obligations and credit file." Plaintiff alleges that this explanation violates the Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691(d), because it neither provided her with the actual or statutorily approved reasons for the credit denial, nor educated her as to the antidiscriminatory purpose of the Act. Plaintiff and Onyx have filed cross-motions for summary judgment. For the reasons set forth here, Plaintiff's motion is denied and Onyx's motion is granted.

## BACKGROUND

Plaintiff, an African-American consumer residing in this district, wanted to purchase a new car. (Def. Facts ¶ 1; Pl. Facts ¶ 1.)[1] On October 16, 2003, she consummated a credit transaction

---

[1] Defendant Onyx Acceptance Corporation's Rule 56.1 Statement of Facts is cited as "Def. Facts ¶ __." Plaintiff's Statement of Uncontested Material Facts Pursuant to Local Rule 56.1(a)(3) is cited as "Pl. Facts ¶ __."

with Northwestern Dodge to buy a 2003 Kia Spectra, with the dealership to arrange for financing. (Third Amended Complt. ¶ 6.) Northwestern Dodge sent Plaintiff's credit application to Onyx, a "creditor" under the ECOA and "a leader in prime and near-prime automobile lending providing financing to franchises and select independent car dealers." (Def. Facts ¶ 2; Pl. Facts ¶ 2; http://www.onyxacceptance.com/home.aspx.) The next day, on October 17, 2003, Onyx notified the dealership that it would not provide Plaintiff with credit based on her "Credit File" and "Excessive Credit Obligations." In the "Comments" section of the fax notice, Onyx further explained that "Customer Doesn't Budget." (Faxback Notice, Ex. E to Pl. Facts.)

On November 2, 2003, Onyx sent Plaintiff a letter informing her of its adverse action on her credit application. (Letter from Onyx to Aikens of 11/2/03, Ex. B to Def. Facts.) The letter explained that Plaintiff had "the right to a written statement of the reasons for our decision" and could "request the statement by contacting our office shown above within 60 days of the date of this notification." (Id.; Def. Facts ¶ 6.) On November 12, 2003, Plaintiff sent a letter to Onyx's legal department requesting that she be provided with the "specific reasons for the [credit] denial." (Letter from Aikens to Onyx of 11/12/03, Ex. C to Def. Facts; Def. Facts ¶ 7.) Onyx responded to Plaintiff's letter on December 2, 2003, explaining that her "application was declined because [of] excessive credit obligations and credit file: therefore, it did not fall within the parameters of our credit programs." (Letter from Onyx to Aikens of 12/2/03, Ex. D to Def. Facts.) At the time, Plaintiff acknowledges, she had "several" outstanding credit obligations, including a federal tax lien. (Aikens Dep., at 132-35.)

Even before her letter to Onyx, Plaintiff initiated this lawsuit on November 7, 2003 against Northwestern Dodge and two other creditors, Chrysler Financial Company, LLC and Household Automotive Finance Corporation, alleging violations of the Truth in Lending Act, 15 U.S.C. § 1602(g), (h); the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2;

and the ECOA.[2] On December 15, 2003, Plaintiff dismissed her claim against Chrysler Financial and added Triad Financial Corporation; Centrix Financial, LLC; Fifth Third Bank; and National Auto Finance Co. as defendants.[3] On February 6, 2004, Plaintiff dismissed defendants Centrix Financial and Fifth Third Bank, and added an ECOA claim against Onyx. On April 30, 2004, Plaintiff filed a Third Amended Complaint dismissing Household Automotive Finance as a defendant. Approximately one year later, on April 25, 2005, Plaintiff accepted an offer of judgment from Northwestern Dodge. Plaintiff also agreed to dismiss Triad Financial and National Auto Finance on May 2 and May 26, 2005, respectively.

Plaintiff now seeks summary judgment against Onyx, the sole remaining defendant, on the basis that Onyx failed to provide her with the actual or statutorily approved reasons for denying her credit application, or to educate her as to the antidiscriminatory purpose of the ECOA. Onyx has filed a cross-motion for summary judgment, arguing that the notice it sent fully complies with the requirements of the Act.

## DISCUSSION

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). See also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering

---

[2] Chrysler Financial and Household Automotive both declined to extend Plaintiff credit for her automobile purchase. (Complaint ¶¶ 32, 38.)

[3] Triad Financial describes itself as "a leader in the non-prime automobile financing industry." (http://www.triadfinancial.com/loans/content/tfc/history.jsp?partner=1868137.) Centrix Financial is a "virtual bank" that provides "a deep and reliable source of funding for [auto] dealerships." (http://www.centrixfinancial.com/autodealers/aboutcf.html.) National Auto Finance Co. provides "indirect consumer automobile financing for the near prime consumer." (http://www.nationalautofinance.com/profile.html.) Triad declined to extend Plaintiff credit for her automobile purchase. (Amended Complaint ¶ 44.) Centrix Financial, National Auto Finance, and Fifth-Third Bank accessed Plaintiff's credit report in connection with her attempt to secure financing for a new car. (Id. ¶ 10.)

cross-motions for summary judgment, the court must view the evidence in a light most favorable to the party opposing the motion under consideration. *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 983 (7th Cir. 2001).

**A.     The ECOA**

The ECOA was enacted in 1974 to prohibit discrimination in credit transactions. *Treadway v. Gateway Chevrolet Oldsmobile Inc.*, 362 F.3d 971, 975 (7th Cir. 2004). In 1976, Congress amended the Act to require that creditors provide consumers with written notice of the specific reasons for denying or revoking credit. *Id.*; 15 U.S.C. § 1691(d)(2) ("Each applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor."); 15 U.S.C. § 1691(d)(6) (defining "adverse action" as "a denial or revocation of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested.") Congress described the notice requirement as

> a strong and necessary adjunct to the antidiscrimination purpose of the legislation, for only if creditors know they must explain their decisions will they effectively be discouraged from discriminatory practices. Yet this requirement fulfills a broader need: rejected credit applicants will now be able to learn where and how their credit status is deficient and this information should have a pervasive and valuable educational benefit. Instead of being told only that they do not meet a particular creditor's standards, consumers particularly should benefit from knowing, for example, that the reason for the denial is their short residence in the area, or their recent change of employment, or their already over-extended financial situation. In those cases where the creditor may have acted on misinformation or inadequate information, the statement of reasons gives the applicant a chance to rectify the mistake.

*Id.* at 977 (quoting *Fischl v. General Motors Acceptance Corp.*, 708 F.2d 143, 146 (5th Cir. 1983)). *See also* 147 S.Rep. No. 94-589, 94th Cong., 2d Sess., *reprinted in* 1976 U.S. Code Cong. & Admin. News., pp. 403, 406. "In sum," the Seventh Circuit explained, "the notice requirement serves two purposes: it discourages discrimination and it educates consumers as to the deficiencies in their credit status." *Treadway*, 362 F.3d at 977.

4

The notice requirement is not, however, "particularly arduous." *Id* at 975 n.2. The Federal Reserve Board has created several sample notification forms which creditors may use as presented, or as modified to suit their needs. 12 C.F.R. § 202, App. C; 68 F.R. 13144, 13184 (March 18, 2003). "These short forms essentially require that the creditor (1) describe the type of credit which the application requested as well as the adverse action taken, and (2) check off the creditor's principal reasons for taking the adverse action from amongst a pre-printed list." *Treadway*, 362 F.3d at 975 n.2. *See also* 12 C.F.R. § 202.9(b)(2) ("The statement of reasons for adverse action required by . . . this section must be specific and indicate the principal reason(s) for the adverse action.")

## B. Onyx's Notice

It is undisputed that on December 2, 2003, Onyx sent Plaintiff timely, written notice that her credit "application was declined because [of] excessive credit obligations and credit file: therefore, it did not fall within the parameters of our credit programs." (Letter from Onyx to Aikens of 12/2/03, Ex. D to Def. Facts.) At the time, Plaintiff had, by her own admission, "several" outstanding credit obligations, including a federal tax lien. (Aikens Dep., at 132-35.) Plaintiff nonetheless argues that the notice furnished by Onyx was insufficient because (1) it does not mirror the sample notices provided by the Federal Reserve Board; (2) it does not provide the actual reason for the credit denial; (3) she found it confusing; and (4) it does not educate her as to the nondiscriminatory purpose of the Act.

### 1. Sample Notices

Plaintiff first objects that Onyx's notice "used terms that were similar to the terms suggested in the model forms, but chose to leave out several key descriptive qualifying terms that would have

5

educated Plaintiff as to the true reason for its decision to deny her credit." (Pl. Mem., at 10.)[4] For example, the sample notice forms include "No credit file" and "Excessive obligations in relation to income" as bases for denying credit. The Onyx notice states only "excessive credit obligations" and "credit file." Contrary to Plaintiff's suggestion, however, the ECOA does not require creditors to utilize the exact language in the sample forms. The introductory note to those forms expressly states that "[t]he sample forms are illustrative and may not be appropriate for all creditors," and that "[a] creditor may design its own notification form or use all or a portion of the forms contained in this appendix." 12 C.F.R. § 202, Appendix C to Part 202, para 3, 5 (2005). *See also Treadway*, 362 F.3d at 975 n.2 (the "sample notification forms . . . can be modified and used by creditors.")

Plaintiff responds that Onyx's modified explanations are improperly vague and fail to educate her as to the reason(s) the company denied her request for credit. Plaintiff relies heavily on *Fischl v. General Motors*, where the Fifth Circuit deemed the phrase "credit references are insufficient" to be "misleading, or at best excessively vague," as compared with the sample notice phrase, "insufficient credit references." 708 F.2d 143, 148 (5th Cir. 1983). The court explained:

> GMAC's perfunctory reliance on the Board's sample checklist was manifestly inappropriate. While it resembles the category of "insufficient credit references" deemed acceptable by the Board, § 202.9(b)(2), the reason for refusal of credit noted by GMAC, "credit references are insufficient," arguably communicates a different meaning. The Board's statement connotes quantitative inadequacy; that of GMAC implies some qualitative deficiency in Fischl's credit status. GMAC's statement does not signal the nature of that deficiency and, since the name and address of the credit bureau was not supplied, did not provide the mandated opportunity for the applicant to correct the erroneous information.

*Id.* at 147.

Unlike the notice in *Fischl*, Onyx's notice does not give rise to more than one interpretation. The phrase "excessive credit obligations" confirms what Plaintiff already knew to be true about her credit status: i.e., that she had "several" outstanding credit obligations, including a federal tax lien.

---

[4] Plaintiff's Motion for Summary Judgment Against Defendant Onyx Acceptance Corporation is cited as "Pl. Mem., at ___."

The phrase also provides Plaintiff with sufficient information regarding the basis for the credit denial. *Cf. Carroll v. Exxon Co., U.S.A.*, 434 F. Supp. 557 (E.D. La. 1977) (creditor violated the ECOA where it notified the plaintiff that "the credit bureau we contacted in your case did not respond adversely, but unfortunately it could furnish little or no definitive information regarding your established credit"; creditor failed to identify the specific credit bureau or to articulate the other, more significant, reasons for the credit denial, including lack of a major credit card or savings account, and employment for only one year). With respect to Plaintiff's challenge to Onyx's use of the phrase "credit file," moreover, the court presumes that for Onyx instead to use sample form language, "No credit file" would have been inaccurate and misleading; Plaintiff did have a credit file but it reflected excessive obligations. Onyx's modification was thus appropriate.

As explained in the Senate Report accompanying the 1976 amendments to the ECOA, the notice requirement was not intended to ensure that "'statements of reasons be given in the form of long, detailed personal letters'"; rather, "'a short, check-list statement will be sufficient so long as it reasonably indicates the reasons for the adverse action.'" *Anderson v. Capital One Bank*, 224 F.R.D. 444, 447 (W.D. Wis. 2004) (quoting *O'Dowd v. South Central Bell*, 729 F.2d 347, 352 (5th Cir.1984). *See also* S. REP. NO. 94-589, 2d Sess. 8 (1976), *reprinted in* 1976 U.S. Code Cong. & Admin. News, pp. 403, 410). The Onyx notice satisfies this standard.

2.  **Actual Reason for Denying Credit**

Plaintiff next argues that Onyx failed to provide her with the "actual reason" it denied her credit application. She notes that Onyx's October 17, 2003 fax to Northwestern Dodge included a statement that "Customer Doesn't Budget." Plaintiff insists that this was the "principal" reason for the credit denial and should have been communicated to her. (Pl. Resp., at 3-4.)[5] She offers no support for that position, however, and admits that she had "several" outstanding credit

---

[5] Plaintiff's Response Brief in Opposition to Defendant Onyx Acceptance's Motion for Summary Judgment is cited as "Pl. Resp., at __."

obligations when she applied for the additional credit. The notice adequately advised Plaintiff that she had too many such credit obligations to qualify for additional credit from Onyx, which is all the ECOA requires. Compare *Carroll*, 434 F. Supp. at 562 (notice inadequate where it stated only that the creditor received insufficient information about plaintiff's established credit from an undisclosed credit bureau and neglected to inform her that she needed a major credit card and a savings account). Thus, the court is not persuaded that Onyx's failure to include the phrase "customer doesn't budget" in her notice establishes an ECOA violation.

### 3. Plaintiff's Understanding

Plaintiff further argues that she did not understand Onyx's notice and "found it confusing." (Pl. Resp., at 4.) According to Plaintiff, "[a]fter [she] read the response many questions were left unanswered. Was she denied because of any unpaid credit card balances? Was the loan amount too big in relation to her state income? Was she delinquent in payments? None of these questions were answered by the response sent by the Legal Department of Onyx." (*Id.*) Contrary to Plaintiff's suggestion, a creditor does not violate the ECOA merely because a particular individual does not understand the notice. The sole burden upon creditors under § 1691(d)(3) is to provide an applicant with a statement of specific reasons underlying the adverse action. Whether an individual applicant actually finds the notice "educational" or "helpful" is irrelevant in assessing the sufficiency of the statutory notice.

In *Higgins v. J.C. Penney, Inc.*, 630 F. Supp. 722 (E.D. Mo. 1986), for example, the plaintiff received a notice explaining that her application for credit was denied based on "credit bureau report/delinquent history." *Id.* at 724. The court found this reason sufficient to "enable[] the plaintiff to focus her efforts in a particular area and to investigate the propriety of the company's decision." *Id.* The court also upheld the creditor's use of the statements "type of bank accounts" and "type of credit references." "While Penney's response required some degree of deductive reasoning by

8

plaintiff, . . . this is not impermissible. . . . While the reasons given by plaintiff might have required her to exert more investigative effort than some might think is appropriate, the Court cannot say that application of the regulations here frustrates the policies underlying the ECOA." *Id.* at 725. The court noted that the plaintiff knew she only had a savings account, and held that she "should have reasonably suspected, after receiving Penney's second letter, that a creditor would look with disfavor on her relatively unsophisticated financial background." *Id.*

In this case, Plaintiff admittedly knew about her outstanding credit card obligations and federal tax lien, and the Onyx notice provided her with sufficient information to investigate the propriety of Onyx's decision. (Aikens Dep., at 132-35.) Even assuming Plaintiff did not understand the notice or know about her various credit obligations, moreover, the ECOA imposes no duty on Onyx to ensure that she did. *See* 15 U.S.C. § 1691(d)(2)(A); *Grant v. World Class Mortgage Corp.*, No. 89 C 3824, 1990 WL 19466, at *2 (N.D. Ill. Feb. 20, 1990) (the ECOA "only required that defendant give plaintiffs a statement of the reasons for the adverse action.")

### 4. Race Neutrality

Plaintiff finally insists that the notice she received from Onyx violates the ECOA because it fails to advise her regarding the antidiscriminatory purpose of the statute. (Pl. Resp., at 5.) In Plaintiff's view, "[t]he term excessive obligations is amorphous and does not point to any specific underwriting criteria used by the creditor which could be used to prove or disprove racial discrimination." (*Id.* at 7.) As a preliminary matter, Plaintiff has not alleged a cause of action for discrimination under § 1691(a). 15 U.S.C. § 1691(a) ("It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction – (1) on the basis of race, color, religion, national origin, sex or marital status, or age . . . .") Instead, Plaintiff claims that the notice she received under § 1691(d) is deficient. Plaintiff points to nothing in the statute requiring that such notice be "race-neutral" or that it allow the applicant to "compare white

and black applicants." (Pl. Resp., at 7.) *Compare Thompson v. Galles Chevrolet Co.*, 807 F.2d 163, 166 n.4 (10th Cir. 1986) (rejecting plaintiffs' "subsidiary suggestions that the denial of credit may have been discriminatorily motivated" where they challenged only the notification provisions of the ECOA). Nor is there any statutory requirement that a creditor inform an applicant of the Act's purpose. As explained earlier, the notice in this case adequately informed Plaintiff of the reasons for Onyx's adverse action, which satisfies the requirements of the ECOA.

## CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment (Docket No. 92) is denied and Onyx's motion for summary judgment (Docket No. 98) is granted.

ENTER:

Dated: January 5, 2006

REBECCA R. PALLMEYER
United States District Judge